## State of Vermont v. Michael A. Schmitt

[554 A.2d 666]

No. 86-326

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed October 21, 1988

*Thomas D. Anderson, Lamoille County Deputy State's Attorney,* Hyde Park, for Plaintiff-Appellee.

*Robert P. Davison, Jr., P.C.,* Stowe, for Defendant-Appellant.

**Barney, C.J.** (Ret.) Specially Assigned. Defendant was found guilty of operating a motor vehicle while under the influence of alcohol. In this appeal, he claims that the State violated several of his constitutional rights, under both the federal and Vermont constitutions, and he objects to the trial court's jury instruction on the meaning of driving under the influence. We affirm.

The facts are not in dispute and may be stated briefly. On April 1, 1986, a Morristown police officer on patrol duty received a complaint of an erratic driver headed north on Route 100 towards Morrisville. The tip described the vehicle as a brown Saab and gave its license number. The officer, Richard Keith, positioned himself about a mile south of Morrisville on Route 100. When Mr. Schmitt drove by in a car matching the description, Officer Keith followed him north into the village. The officer observed the vehicle to be traveling slowly, weaving within its lane, and crossing over the center line as it rounded a curve. At the traffic light in Morrisville, the officer noted that the car came to a stop only under the light in the middle of the intersection.

Officer Keith then activated his blue lights and pulled the Saab over. Mr. Schmitt emerged, walked back to the cruiser, was asked for his license and registration, returned to his car for the documents, and returned to the cruiser. Officer Keith noticed that Mr. Schmitt was unsteady as he walked and that his breath smelled of intoxicants. He therefore asked Mr. Schmitt to have a seat in the cruiser and radioed for assistance.

Shortly thereafter, Morrisville Police Officer Russell Tribble arrived and attempted to have Mr. Schmitt perform several field sobriety tests. After initially refusing to cooperate, Mr. Schmitt performed and failed the test. Based on the test results and the defendant's appearance, Officer Tribble concluded that Mr. Schmitt was under the influence. Defendant was transported to the Morristown police station where he was read the *Miranda* warnings.

Defendant's motions to suppress were denied, and the results of the field sobriety tests as well as statements made to the police officers were introduced into evidence at his trial.

Defendant raises three issues on appeal. First, he claims that the trial court violated his rights under the Fifth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution when it admitted into evidence the results of the sobriety tests, administered while he was in custody but before he received the *Miranda* warnings. Second, he claims that the trial court violated his rights under the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution when it failed to suppress all evidence obtained after he was detained without a warrant. Finally, he claims that the trial court erred in its jury instruction on the definition of driving under the influence.

At the outset we note that defendant's arguments based on the Vermont Constitution are made for the first time on this appeal. It is well-settled, however, that claims raised initially on appeal will not be reviewed unless they amount to plain error. V.R.Cr.P. 52(b); *State v. Ramsay*, 146 Vt. 70, 75, 499 A.2d 15, 18 (1985). "We have frequently stated that plain error will be found only in a rare and extraordinary case where the error is an obvious one and so grave and serious as to strike at the very heart of a defendant's constitutional rights or adversely to affect the fair administration of justice. E.g., *State v. Mecier*, 145 Vt. 173, 178, 488 A.2d 737, 741 (1984); *State v. Anderkin*, 145 Vt. 240, 245, 487 A.2d 142, 144 (1984)." *Ramsay*, 146 Vt. at 75, 499 A.2d at 18. Defendant's state constitutional arguments — that the administration of the field sobriety tests and his detention without a warrant were in violation of the Vermont Constitution — are novel. The trial court's error, if any, in admitting evidence obtained pursuant to the claimed violations is therefore far from obvious, and could not rise to the level of plain error. Thus we will not address

defendant's state constitutional arguments as they are not properly before us. See *State* v. *Maguire*, 146 Vt. 49, 54, 498 A.2d 1028, 1031 (1985).*

█ We now turn to defendant's federal constitutional claims, which are squarely before us. Defendant first argues that the results of the sobriety test, administered prior to any *Miranda* warnings, should have been suppressed at trial. The validity of this argument depends on two premises. First, defendant must have been in custody, as the term is defined for Fifth Amendment purposes in *Berkemer* v. *McCarty*, 468 U.S. 420, 437-40 (1984), before *Miranda* warnings are required. See *State* v. *Willis*, 145 Vt. 459, 472-74, 494 A.2d 108, 117 (1985). Second, undergoing a field sobriety test must be the sort of activity that is protected by the Fifth Amendment privilege against self-incrimination. Because we have held previously that it is not, see *State* v. *Lombard*, 146 Vt. 411, 417, 505 A.2d 1182, 1185-86 (1985), we do not reach the question of whether Mr. Schmitt was in custody at the time he took the sobriety test.

In *Lombard*, we wrote:

> The privilege against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in generating evidence which may be used against him. See *Schmerber* v. *California*, 384 U.S. 757, 763-64 (1966) (defendant compelled to submit to blood test). The privilege only protects the accused from being compelled to provide evidence that is testimonial or communicative in nature. *Id.*
>
> We decline to hold that field dexterity tests constitute communicative or testimonial acts implicating Fifth Amendment rights. Although they necessarily rest on the subjective observations of the testing officer, they are designed to reveal objective information about the driver's coordinative capabilities. *People* v. *Ramirez*, 199 Colo. 367, 375, 609 P.2d 616, 621 (1980). Thus, the tests are not within the privilege

---

* *State* v. *Jewett*, 146 Vt. 221, 500 A.2d 233 (1985), is not to the contrary. In *Jewett*, we held that advocates ought to raise state constitutional issues at the trial level where appropriate to protect the interests of their clients. *Id.* at 229, 500 A.2d at 238. See also *State* v. *Record*, 150 Vt. 84, 86, 548 A.2d 422, 424 (1988) (recognizing the Court's role "as the final arbiter of this state's constitution"). Our point here is merely that all issues must be timely raised in order to preserve them for appeal.

against self-incrimination and officers need not give *Miranda* warnings to defendants prior to administering them.

*Id.* We reaffirm that holding today.

■ Defendant next argues that he was detained in violation of the Fourth Amendment. This argument has no merit. Police officers may conduct warrantless stops when " 'specific and articulable facts . . . , taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *State* v. *Lambert*, 146 Vt. 142, 143, 499 A.2d 761, 762 (1985) (quoting *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968)). The rule includes vehicle stops. *Id.* In *Lambert*, the Court upheld a vehicle stop based solely on thirdhand hearsay information. *Id.* The rule applies a fortiori to the case at hand, where the "specific and articulable facts" included direct observation. See *State* v. *Boardman*, 148 Vt. 229, 231, 531 A.2d 599, 601 (1987).

Defendant argues that the police officer's reliance on the tip was unjustified. However, the reliability of the tip is irrelevant to the disposition of this case. Officer Keith indeed pulled out after defendant's car based on the information he received from the tip, but the mere act of following defendant in his cruiser, without his lights or siren activated, in no way infringed defendant's constitutional rights. A rule to the contrary would lead to absurd results.

Officer Keith stopped defendant only after observing, for some period, several instances of erratic and dangerous driving, which together clearly provided the "specific and articulable facts" required to warrant the stop. See *State* v. *Boardman*, 148 Vt. at 231, 531 A.2d at 601 (finding "an articulable and reasonable suspicion that defendant was operating his motor vehicle while intoxicated" where "officer observed defendant crossing the centerline on numerous occasions"). The effort to keep the state's roads free of drunk drivers would be hampered indeed if police could not stop a car in circumstances of such telltale conduct as occurred in this case.

■ Finally, defendant claims that the trial court's instruction to the jury on the meaning of driving while under the influence was in error. The trial court defined "under the influence" as follows:

Under the influence occurs when a person's full mental or physical faculties, his mental or physical ability, are dimin-

ished, impaired or affected in the slightest degree by intoxicating liquor.

Defendant argues that the words "slightest degree" create a misleading emphasis, and would substitute language gleaned from *State* v. *Carmody*, 140 Vt. 631, 638, 442 A.2d 1292, 1295 (1982), defining "under the influence" as requiring "observable behavior indicating a loss of full control over the faculties of mind and body."

Defendant's reliance on *Carmody*, however, is misplaced. Indeed, *Carmody* supports the opposite position, as it explicitly upheld a jury instruction using the "slightest degree" language. *Id.* at 637, 442 A.2d at 1295. That language has been used since 1933, *State* v. *Storrs*, 105 Vt. 180, 185, 163 A.2d 560, 562, and reaffirmed in the caselaw since, except where the evidence deals solely with the chemical level of alcohol. See, e.g., *State* v. *Stockwell*, 142 Vt. 232, 235, 453 A.2d 1120, 1122 (1982). In *Carmody*, we rejected the "contention that the meaning of 'under the influence' has been altered since *Storrs* by changes in the statutes." 140 Vt. at 637, 442 A.2d at 1295. We therefore reject defendant's challenge to the jury instruction in this case.

*Affirmed.*

