## State of Vermont v. Donald L. Conn

[565 A.2d 246]

No. 86-016

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed July 7, 1989

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Nancy Gianlorenzo*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** Donald L. Conn, defendant below, was convicted after a trial by court of careless and negligent driving, 23 V.S.A. § 1091(a); leaving the scene of an accident, 23 V.S.A. § 1128; and driving with license suspended (seventh offense), 23 V.S.A. § 674. He appeals his conviction on two grounds: (1) that the purported waiver of his right to a jury trial was defective; and (2) that the information failed to allege a knowledge element. We reject both claims and affirm the conviction.

On May 31, 1985, Ms. Joy Greenwood was driving her car on Interstate 89, through Bolton, Vermont when she noticed a gray car come up fast behind her. The gray car nearly collided with her before it swerved into the breakdown lane and slowed. Ms. Greenwood again saw the car come up from behind her, traveling at between 85 and 100 miles-per-hour. This time the gray car hit the rear end of Ms. Greenwood's vehicle lifting it into the air. Ms. Greenwood observed the driver of the gray car and recorded its license plate number.

A witness also observed the collision, after noticing that the gray car weaved all over the road and was driven, at times, in the breakdown lane. The witness also clearly observed the driver of this car because it passed him at one point and the operator turned and smiled at him. The witness estimated that the gray car was travelling between ninety and one hundred miles-per-hour when it hit Ms. Greenwood's vehicle.

After the accident, both Ms. Greenwood and the witness left the interstate highway in Waterbury to report the collision to the police. They both observed the operator of the gray car looking under the hood of the car at a Waterbury gas station and that radiator fluid was leaking from the car and the front end was damaged. The operator was later identified as the defendant.

Defendant was arraigned on July 8, 1985, on the three charges, and was represented at arraignment and subsequent criminal proceedings by a public defender. On August 12, 1985, during a calendar call, defendant waived his right to jury trial by a writing, as provided in V.R.Cr.P. 23(a).[1] The waiver of jury trial form was signed by defendant, the state's attorney, defendant's attorney and was approved by the presiding judge. The waiver form identified the charges against defendant only as "LSA, DLS, C & N."[2] There was no on-the-record discussion of the waiver between the court and the defendant.[3]

-----

[1] Rule 23(a) provides:

The defendant may in a signed writing or in open court, with the consent of the prosecuting attorney and the court entered of record, waive a jury trial in offenses not punishable by death or imprisonment in the state prison.

This rule is in all essential respects the same as the federal rule.

[2] The form states:

I, the Defendant named above, am charged with the crime of LSA, DLS, C & N an offense not punishable by death or life imprisonment. I have been informed by the Court and my lawyer that I have the right to have my guilt or innocence determined by a jury after trial. I fully understand that right.

I hereby waive (give up) my right to a jury trial. I consent to a trial by Court wherein the Judge will determine my guilt or innocence after a trial without a jury.

[3] The brief transcript from August 12, 1985, the date the written waiver was filed, shows that there was a calendar call on that date and that defendant's lawyer stated that defendant "would ... like a trial by court" and the court responded "very well." While it is logical to assume that defendant was

A trial by court was held on October 20, 1985, resulting in a guilty finding on each of the offenses occurring on November 7, 1985. In findings of fact and conclusions of law, the trial court rejected defendant's claims that he was unaware of the accident and that he did not receive notice that his license was suspended.

■ Defendant first challenges the waiver of jury trial. A trial by jury in a criminal case is an individual right which may be waived. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a ... trial by an impartial jury ...."); Vermont Const. ch. I, art. 10 ("in all prosecutions for criminal offenses, a person hath a right to ... a speedy public trial by an impartial jury ...."). The Vermont Constitution sets forth specifically the methods by which a waiver may be obtained. Chapter I, Article 10 provides that "the accused, with the consent of the prosecuting officer entered of record, may in open court or by a writing signed by him and filed with the court, waive his right to a jury trial ...." See also *State v. Ibey*, 134 Vt. 140, 141, 352 A.2d 691, 692 (1976). Vermont Rule of Criminal Procedure 23(a) reiterates this waiver procedure and adds a requirement for the consent of "the court entered of record." It is undisputed that the written waiver in this case meets the requirements of the Vermont Constitution and Criminal Rule 23(a).

■■ Defendant makes two arguments why the waiver in this case should be found invalid: (1) since there is no showing on the record that the waiver was "knowing and intelligent," it is insufficient to waive a constitutional right; (2) even if the waiver is constitutionally sufficient, this Court should require that trial judges conduct an on-the-record colloquy between the court and the defendant to show that a knowing and intelligent waiver was made. We cannot accept the first argument, although we do agree that the better practice is for the trial judge to inquire of the defendant on the record to be

---

present in court because he signed the written waiver on that date, his presence is not shown by the record. Accordingly, we have not considered the brief in-court statements as relevant on the issue of jury trial waiver in this case.

sure that the waiver is knowing and intelligent. The overwhelming weight of authority in the state and federal courts is that such an on-the-record colloquy is not constitutionally required. See, e.g., *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985); *United States v. Scott*, 583 F.2d 362, 364 (7th Cir. 1978); *People v. Norman*, 703 P.2d 1261, 1271 (Colo. 1985); *State v. Marino*, 190 Conn. 639, 644–46, 462 A.2d 1021, 1025–26 (1983); *Hutchins v. State*, 493 N.E.2d 444, 445 (Ind. 1986). We adopt the rationale of most of these cases that a written waiver signed by the defendant and counsel, which shows an understanding of the right to be waived, is sufficient to establish a prima facie effective waiver. See *Cochran*, 770 F.2d at 851; *Norman*, 703 P.2d at 1271. In the absence of evidence to the contrary, such a showing is sufficient to establish a knowing, intelligent and voluntary waiver sufficient to satisfy constitutional requirements. Here, there was a sufficient written waiver and no evidence to suggest that defendant's waiver was not knowing, intelligent or voluntary. There was no constitutional violation in this case.

■ We accept defendant's second argument that it is better practice for the trial court to engage a defendant wishing to waive his right to a jury trial in a colloquy, on the record, to determine whether the waiver is voluntary, knowing, and intelligently made. See, e.g., *Cochran*, 770 F.2d at 852 ("strongly believe ... trial courts *should* conduct colloquies with the defendant before accepting a waiver of the right to jury trial") (emphasis in original); *Scott*, 583 F.2d at 364 ("the better practice is to interrogate defendants on the subject of their understanding of the right to a jury trial and waiver thereof"). In *Ciummei v. Commonwealth*, 378 Mass. 504, 509–10, 392 N.E.2d 1186, 1189–90 (1979), the Supreme Judicial Court of Massachusetts itemized the kind of on-the-record colloquy that should occur:

> In the exchange, the judge will advise the defendant of his constitutional right to a jury trial, and will satisfy himself that any waiver by the defendant is made voluntarily and intelligently. We do not intend to create a rigid pattern but note that, where a defendant needs a compendious reminder, the judge might state that the jury consists of members of the community, that the defendant

may participate in their selection, that the verdict of the jury must be unanimous, that they decide guilt or innocence while the judge makes rulings of law in the course of the trial, instructs the jury on the law, and imposes sentence in case of guilt; and that, where a jury is waived, the judge alone decides guilt or innocence in accordance with the facts and the law. The judge should make sure that the defendant has conferred with his counsel about the waiver, and that he has not been pressured or cajoled and is not intoxicated or otherwise rendered incapable of rational judgment.

We add that the judge's responsibility should not be "discharged as a mere matter of rote," but rather "with sound and advised discretion" as befits the relinquishment of so vital a right. On the other hand, ... the defendant, being competent, must simply have indicated a comprehension of the nature of the choice. In most cases, the conversation should take but a few minutes.

*Id.* (citations omitted) (quoting *Patton v. United States*, 281 U.S. 276, 312 (1930)).

The issue before us, however, is whether we should take any action in this appeal to implement this preference. We note that different courts have taken different approaches. Some courts have recommended an on-the-record colloquy but have not required it. See, e.g., *United States v. Martin*, 704 F.2d 267, 274 (6th Cir. 1983) ("We implore the district courts to personally inform each defendant of the benefits and burdens of jury trials on the record prior to accepting a proffered waiver."). Others have required such a colloquy, but almost always have done so on a prospective basis only. In *Scott*, 583 F.2d at 364, the Seventh Circuit Court of Appeals adopted such a rule under its supervisory power over the district courts and put it into effect one month after the date of the decision. In *Ciummei*, 378 Mass. at 511, 392 N.E.2d at 1190, the Supreme Judicial Court of Massachusetts established its rule requiring an on-the-record conversation to validate a jury waiver on a "completely prospective" basis. We agree with the *Ciummei* court that any action we take on this issue should be prospective only. In the absence of a denial of defendant's constitutional rights or his rights under V.R.Cr.P. 23(a), there

is no ground to reverse defendant's conviction for a retrial. We do not believe, however, that either of the approaches described above is a desirable method of establishing criminal procedure for future cases especially where the area of waiver of jury trial is already covered by a specific state constitutional provision as well as a rule of criminal procedure. Our constitution commands us to "make and promulgate rules governing practice and procedure in ... criminal cases in all courts." Vt. Const. ch. II, § 37. We take this as a constitutional preference for mandating procedure through rule-making rather than through court decision. Certainly, promulgation of a rule allows us to give specific guidance to trial courts on how to implement any waiver procedure without waiting for future decisions of this Court to flesh out their responsibility. It also places the procedure in this area in one place, readily accessible to the bench and bar. Accordingly, we refer to our Advisory Committee on the Vermont Rules of Criminal Procedure the question of what procedure, if any, should be added to ensure that a defendant's waiver of the right to trial by jury is knowing, intelligent and voluntary.

Defendant's second claim of error is that the information charging him with leaving the scene of an accident is fatally defective because it failed to allege the element of actual knowledge. See *State v. Sidway*, 139 Vt. 480, 485, 431 A.2d 1237, 1239 (1981) (knowledge on the part of the accused that an accident occurred is an essential element of the offense). In *State v. Roy*, 151 Vt. 17, 28–29, 557 A.2d 884, 891 (1989), we held that an information that tracks the statutory language of an offense but fails to specifically allege a knowledge element that is required by judicial decision to prove the offense was not fatally defective where defendant failed to object below. The *Roy* holding was based in part on our conclusion that the information in that case set forth the charges with sufficient particularity to allow the defendant to make an intelligent preparation of his defense. *Id.*

This case is governed by *Roy*. As in *Roy*, we find that the defendant was sufficiently apprised of the charges against him so that he was able to prepare his defense. In fact, his defense at trial was lack of knowledge, and the trial court specifically found on the facts outlined at the beginning of this

opinion that he knew he had struck Ms. Greenwood's vehicle. We fail to see how defendant would have been aided by the language he now claims was omitted from the information. There is no error.

*Affirmed.*