### State of Vermont v. Todd E. Lancto

[582 A.2d 448]

No. 89-142

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed September 7, 1990

---

*Pamela Hall Johnson* and *Gary S. Kessler,* Department of State's Attorneys, Montpelier, and *William Sorrell,* Chittenden County State's Attorney, Burlington, for Plaintiff-Appellee.

*Hoff, Agel, Curtis, Pacht & Cassidy, P.C.,* Burlington, for Defendant-Appellant.

**Peck, J.** Defendant, charged with driving under the influence of intoxicating liquor, appeals from the district court's denial of his motion to suppress. At issue is whether the trial court erred in finding that defendant was not in custody during a state police officer's questioning of him in a police cruiser, and that *Miranda* warnings were therefore not required. Defendant entered a conditional plea of nolo contendere, and this appeal followed. We affirm.

On April 22, 1988, a state trooper was dispatched to investigate an accident on Interstate 89 in Colchester. When he arrived at the scene, he found skid marks and damage to the

guardrails on both sides of the road, but no vehicle. Marks on the road indicated that the vehicle had continued northbound, so the trooper drove north to see if he could locate it. About a mile and a half north of the accident scene, the trooper came upon an unoccupied car with a flat tire and body damage corresponding to the damage to the guardrails. His investigation of the automobile indicated that someone in the car had sustained a head injury. He radioed in the vehicle's license plate number and learned that it was registered to Todd Lancto, the defendant. After examining the car, the trooper drove to the closest exit, thinking that the operator might have gone to telephone for assistance.

At the exit, the trooper saw two men walking from a phone booth to a nearby gas station. The trooper, who was in uniform, approached the two men and asked one of them, defendant, who had a fresh injury to his eye, to identify himself. He stated that his name was Todd Lancto. When the officer asked him whether he had been in an accident, defendant replied that he had been in a fight. The trooper told defendant that he knew defendant had not been in a fight, and to have a seat in the police cruiser.

After joining defendant in the cruiser, the trooper began to fill out an accident report. As he was doing so, he noticed an odor of alcoholic beverages, and that defendant's eyes were bloodshot. The officer suspected that defendant had been driving under the influence of alcohol, and questioned defendant about his time of operation, how much he had had to drink, and the time of his first drink. After following the implied consent procedure, the trooper advised defendant of his *Miranda* rights, and defendant refused to answer any questions. Defendant was processed for driving while under the influence of intoxicating liquor.

At a hearing on defendant's motion to suppress statements made before the administration of *Miranda* warnings, the court ruled that the discussion inside the cruiser did not constitute custodial interrogation, and accordingly denied defendant's motion. The specific statements at issue concerned whether defendant had been drinking and the time of his last drink.

■■ At the outset we note that the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 436 (1966), apply only if a de-

fendant is "in custody" and subjected to custodial interrogation. The inquiry here is whether defendant's questioning within the confines of the police cruiser constituted custodial interrogation. Questioning conducted in a police cruiser does not, in itself, establish custody. We have recently held that such questioning is not necessarily coercive, absent some evidence that the police officer's actions were "'calculated to break the suspect's will.'" *State v. Olson*, 153 Vt. 226, 230, 571 A.2d 619, 622 (1989) (quoting *Oregon v. Elstad*, 470 U.S. 298, 312 (1985)). At oral argument, counsel for defendant conceded that it was proper for a police officer to ask a defendant to get into the cruiser for the purpose of asking questions about the accident.

Normally the custody inquiry is whether, under the totality of the circumstances, a reasonable person would believe he was at liberty to leave or to decline to answer the officer's questions. *State v. Willis*, 145 Vt. 459, 475, 494 A.2d 108, 117 (1985). On appeal, we are bound to uphold trial court rulings that are not clearly erroneous and that have credible evidentiary support, even though inconsistencies or substantial evidence to the contrary exists. *State v. Harvey*, 145 Vt. 654, 657, 497 A.2d 356, 357 (1985); see also *State v. Gulley*, 155 Vt. 65, 72, 580 A.2d 980, 985 (1990). Here, the trial court's determination that a reasonable person would have believed that he or she was free to leave or to refuse to answer questions was not clearly erroneous.

Furthermore, in *Berkemer v. McCarty*, 468 U.S. 420 (1984), the United States Supreme Court acknowledged that while most motorists would not feel free to leave the scene of a traffic stop without the investigating officer's permission, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*" absent some showing that they were "subjected to restraints comparable to those associated with a formal arrest." *Id.* at 440–41. Moreover, we have held that "[a] brief detention or *Terry* stop . . . does not require *Miranda* warnings." *Willis*, 145 Vt. at 475, 494 A.2d at 117.

On these facts, we hold that the defendant was not entitled to *Miranda* warnings before the police officer questioned him. Defendant's questioning in a police cruiser was not custodial. The trooper's statement that he knew defendant had not

been in a fight is insufficient to show that he was making a formal arrest, as defendant maintains. As in *State v. Boardman,* "the stop was routine and the detention was brief. Only one officer was involved, and the interrogation was conducted on a public highway where the atmosphere was substantially less 'police dominated' than the types of interrogation addressed in *Miranda* and subsequent cases where *Miranda* has been applied." 148 Vt. 229, 231, 531 A.2d 599, 601 (1987). Since defendant was not subjected to custodial interrogation, his privilege against self-incrimination was not violated, and *Miranda* warnings were not required.

*Affirmed.*